1

2

3

4

5

6

7

8

9

10

11

12

13

14

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: WYZE
DATA INCIDENT LITGATION

CASE NO. C20-0282-JCC

ORDER

15     This matter comes before the Court on Defendant Wyze Labs, Inc.'s motion to compel

16 arbitration and dismiss (Dkt. No. 24). Having thoroughly considered the parties' briefing and the

17 relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for

18 the reasons described herein.

19 **I.     BACKGROUND**

20     Plaintiffs, unrelated individuals, established user accounts with Defendant Wyze, Inc.

21 between January 2018 and October 2019. (Dkt. No. 47-2 at 3.) They did so to facilitate their use

22 of Defendant's internet-enabled home security cameras. (*See* Dkt. Nos. 32–45.) Plaintiffs first

23 acquired the cameras through a combination of third-party retailers and direct purchases from

24 Defendant. (Dkt. No. 30 at 7.) Plaintiffs then installed the cameras in their homes. (Dkt. Nos. 32–

25 45.) Once Plaintiffs powered up the cameras and downloaded a monitoring application to their

26 smartphones, Defendant's application directed Plaintiffs to establish a user account. (*Id.*)

1  Defendant collected Plaintiffs' personally identifiable information through this process. (Dkt.

2  No. 30 at 7; *see* Dkt. Nos. 32–45.) This included usernames, e-mail addresses, and WiFi network

3  details. (Dkt. No. 30 at 7.) Defendants unintentionally exposed this information in a December

4  2019 data breach. (Dkt. No. 30 at 7.)

5  Plaintiff Matthew Schoolfield brought suit against Defendant in a February 2020 putative

6  class action, asserting a variety of claims, including negligence, invasion of privacy, and breach

7  of implied contract. (Dkt. No. 1.) Plaintiff Sherri Adams and other allegedly similarly-situated

8  individuals brought a comparable putative class action suit in March 2020 asserting similar

9  claims and adding allegations supporting violations of various state privacy and consumer

10  protection laws. *Adams v. Wyze Labs, Inc.*, Case No. C20-0370-JCC, Dkt. No. 1 (W.D. Wash.

11  2020). The Court consolidated those cases into the instant matter. (Dkt. No. 15.) Plaintiffs then

12  filed an amended complaint containing all of the claims described above. (Dkt. No. 23.)

13  Defendant now moves to compel arbitration and dismiss. (Dkt. No. 24.) It asserts that by

14  accepting its terms and conditions, Plaintiffs individually agreed to arbitrate their claims and the

15  Court should compel arbitration and dismiss the matter with prejudice. (*See generally* Dkt. No.

16  24.) Plaintiffs oppose, arguing that they never agreed to Defendant's terms and conditions and,

17  even if they did, the arbitration provision is procedurally unconscionable. (*See generally* Dkt.

18  No. 30.)

19  **II.    DISCUSSION**

20    **A.    Legal Standard**

21  In a motion to compel arbitration, the Court determines "(1) whether a valid agreement to

22  arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue." *Chiron*

23  *Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking

24  to compel "bears 'the burden of proving the existence of an agreement to arbitrate by a

25  preponderance of the evidence.'" *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th

26  Cir. 2017). The court applies "ordinary state-law principles that govern the formation of

contracts" to decide whether an agreement to arbitrate exists. *Id.* If one does, the Federal

Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but

instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Id.* "[A]ny

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

whether the problem at hand is the construction of the contract language itself or an allegation of

waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth*, 473 U.S. 614, 626 (1985).

### B.   Agreement to Arbitrate

Beginning in July 2018, Defendant implemented a "clickwrap" arrangement describing

its terms and conditions.[1] When creating an account, users had to click a box indicating that they

agreed to Defendant's terms and conditions, available via a hyperlink, before continuing. (Dkt.

Nos. 25 at 2; 25-1 at 2.) Defendant later modified the clickwrap process, making the link to its

terms and conditions more prominent and requiring established account holders to click the

"Agree" box—indicating an affirmative assent to the terms and conditions—before they could

again access their cameras with their smartphones. (Dkt. Nos. 25 at 2–3; 25-1 at 11.)

These terms and conditions included a section labeled "DISPUTE RESOLUTION AND

ARBITRATION/WAIVER OF CLASS ACTION AND JURY TRIAL." (Dkt. No. 25-1 at 22.)

That section indicated that "[Defendant] and you agree to exclusively arbitrate all disputes and

claims . . . THIS ARBITRATION IS MANDATORY AND NOT PERMISSIVE." (*Id.* at 23.)

The provision also included a 30-day opt out period, whereby users who "do not wish to be

bound by arbitration and class-action waiver provisions" could opt out by notifying Defendant in

writing within 30 days "of the date you first accept the Agreement." (*Id.* at 24.) No Plaintiff

utilized this opt out provision. (Dkt. No. 25 at 4.)

---

[1] A clickwrap agreement "presents the user with a message . . . requiring that the user manifest . . . assent to the terms of the license agreement by clicking an icon. The product cannot be obtained or used unless and until the icon is clicked." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002).

Under Washington law,[2] a consumer "cannot successfully argue that the contract is unenforceable as long as [he or she] was not deprived of the opportunity to read it." *Signavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, slip op. at 3 (W.D. Wash. 2007) (citing *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)). While Washington law relating to clickwrap agreements is scarce,[3] it clearly allows for the enforcement of "shrink-wrap" agreements, even if the consumer did not read the agreement. *M.A. Mortensen Company, Inc. v Timberline Software Corp.*, 998 P.2d 305, 308–09 (Wash. 2000). In any case, courts throughout this circuit have consistently upheld arbitration provisions contained in clickwrap agreements. *See generally, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016); *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822 (W.D. Wash 2019); *Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, slip op. (E.D. Cal. 2016).

Plaintiffs argue that they did not assent to arbitration because (a) Defendant did not attempt to apprise them of its terms and conditions when *purchasing* their equipment—only when later establishing user agreements[4]—and (b) the hyperlink to Defendant's terms and conditions was not sufficiently conspicuous to bind Plaintiffs. (Dkt. No. 30 at 11–15.) For the reasons described below, the Court finds neither argument persuasive.

First, the Court does not view the time period between purchase and notice as legally significant. While most Plaintiffs established user accounts shortly after purchasing their cameras, some waited as long as two months. (*Compare* Dkt. No. 32-1, 43 at 1, *with* Dkt. No.

---

[2] The parties agree that Washington law controls in this matter. (*See* Dkt. No. 30 at 9–10; 46 at 7.)

[3] The Court is not bound by *Hastings v. Unikrn, Inc.*, 12 Wn. App. 2d 1072 (Wash. App. 2020) (unpublished) (clickwrap case where the Washington Court of Appeals indicated that it confined its analysis to issues raised and briefed).

[4] Plaintiffs also indicate that they do not recall reading "any information about an arbitration agreement" when completing the sign up process. (Dkt. Nos. 32–45.) But a failure to recall is not a sufficient basis to assert that an otherwise valid agreement is unenforceable. *See Coppock v. Citigroup, Inc.*, 2013 WL 1192632, slip op. at 4 (W.D. Wash. 2013).

47-2 at 3.) Regardless, the primary subject of the parties' agreement was Defendant's *monitoring services*, i.e., linking cameras to smartphones, not the purchase of the camera. (*See generally* Dkt. No. 25-1 at 15–25.) Moreover, even if the purchase was integrally related to the monitoring services, Plaintiffs present the Court with no precedent that even a two month delay would preclude a manifestation of mutual intent. This district has previously enforced an arbitration clause much like the instant one, where the terms of service were not made available until after the plaintiff purchased the equipment.  *See Diaz v. Nintendo of Am. Inc.*, 2020 WL 996859, slip op. at 1 (W.D. Wash. 2020).

Second, the Court finds that the hyperlink was sufficiently conspicuous to support a valid clickwrap agreement. The link and the click box, both in style and substance, are comparable to other clickwrap arrangement upheld by courts in this and other districts. *See, e.g.*, *Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, slip op. at 3 (W.D. Wash. 2019); *Harbers v. Eddie Bauer*, LLC, 2019 WL 6130822, slip op. at 5 (W.D. Wash 2019); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012).

Finally, the Court is not persuaded by Plaintiffs' argument that Defendant fails to meet its evidentiary burden regarding Plaintiffs' assent to its terms and conditions. (*See* Dkt. No. 30 at 15.) Plaintiffs admit they had active user accounts on or after December 2018. (Dkt. Nos. 32–45.) Defendant provided sufficient evidence to show that any person who had such a user account could not have accessed his or her account without, at some point, clicking a box indicating that he or she agreed to Defendant's terms and conditions. (Dkt. Nos. 25 at 2–3; 25-1 at 7.) Plaintiffs do not dispute this evidence, instead suggesting that for Defendant to meet its evidentiary burden, it must have evidence of individualized acts of assent. (Dkt. No. 30 at 15.) This is not required. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989 (N.D. Cal. 2017) (relying on screenshots contained in a declaration of what users would have seen); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 at 1167 (relying on evidence that all active Facebook users would have received relevant notice).

1    Thus, the Court finds that Plaintiffs are subject to the arbitration provision contained in

2    Defendant's October 2018 terms and conditions. (Dkt No. 25-1 at 22–24.)

3    **C.      Scope of Agreement**

4    Plaintiffs assert that even if they assented to Defendant's terms and conditions, the

5    arbitration provision is procedurally unconscionable. (Dkt. No. 30 at 16.) But "a court may not

6    decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein,*

7    *Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 530 (2019). The arbitration

8    provision at issue covers "all disputes and claims that arise from or relate to the Agreement or

9    the Services or Products in any way . . . This agreement to arbitrate is intended to be broadly

10   interpreted." (Dkt. No. 25-1 at 23.) This would necessarily include "the enforceability of [the

11   arbitration a]greement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010). Moreover, the

12   arbitration provision incorporates the Consumer Arbitration Rules. (Dkt. No. 25-1 at 23.) This

13   "constitutes 'clear and unmistakable' evidence that the parties intended to delegate the

14   arbitrability question to an arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

15   2015); *see also Willis v. Fitbit, Inc.*, 2020 WL 417943, slip op. at 4 (S.D. Cal. 2020) (plaintiff's

16   challenge to arbitration provision as a whole, rather than delegation of component, bars the court

17   from considering unconscionability defense).

18   The question of whether the arbitration provision here is unconscionable must be

19   determined by the arbitrator.

20   **D.      Dismiss Versus Stay**

21   According to the FAA, if the Court determines that claims are subject to arbitration, the

22   Court should "stay the trial of the action until such arbitration has been had in accordance with

23   the terms of the agreement." 9 U.S.C. § 3. However, a district court may also dismiss a case

24   where all claims must be submitted to arbitration. *See Sparling v. Hoffman Constr. Co., Inc.*, 864

25   F.2d 635, 637–39 (9th Cir. 1988) (holding that trial court did not err in dismissing case because

26   plaintiff was required to submit all claims to arbitration); *Roque v. Applied Materials, Inc.*, 2004

WL 1212110, slip op. at 4 (D. Or. 2004) ("If a claim must be submitted to arbitration because the standards set forth in the FAA are met, (*e.g.* it is a valid, enforceable arbitration clause), then the FAA removes a district court's subject matter jurisdiction to hear the claim."). Here, because the Court holds that all of Plaintiffs' claims must be submitted to arbitration, dismissal is appropriate.

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and dismiss (Dkt. No. 24) is GRANTED. The case is DISMISSED without prejudice.

DATED this 22nd day of October 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE